

**IT IS ORDERED as set forth below:**

**Date: March 31, 2022**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: | |
| ANVETTA MARIA RUFF, | CASE NO. 20-68555-PWB |
| Debtor. | |
| | CHAPTER 7 |
| MARY IDA TOWNSON, UNITED STATES TRUSTEE, | |
| Movant, | |
| v. | |
| ANVETTA MARIA RUFF, | |
| Respondent. | CONTESTED MATTER |

## ORDER ON MOTIONS OF UNITED STATES TRUSTEE
## TO DISMISS UNDER 11 U.S.C. § 707(b)(1)

Section 707(b)(1) of the Bankruptcy Code provides that the court, on the motion of a party in interest, including the United States Trustee, may dismiss a chapter 7 case filed by an individual debtor whose debts are "primarily consumer debts" if it finds that the granting of relief would be an abuse.

The sole legal issue before the Court is whether the Debtor's student loan debts, which comprise the majority of her debts, are "consumer debts" as that term is defined in 11 U.S.C. § 101(8) and as incorporated in § 707(b).

Section 707(b) provides for dismissal of a chapter 7 case or its conversion to chapter 13 (with the consent of the debtor) if granting chapter 7 relief would be an "abuse."  A presumption of abuse arises under § 707(b)(2) based upon the Debtor's current monthly income and expenses.  Alternatively, the court may find abuse based on the totality of the circumstances under § 707(b)(3).  The United States Trustee seeks dismissal of this case on both grounds.  [Doc. Nos. 15, 26].

If the student loans are "consumer debts," the parties agree that the presumption arises.  If the Debtor's student loans are not "consumer debts," then the Debtor's debts are not primarily consumer debts, § 707(b) is not applicable, and her chapter 7 case may proceed.

After conducting an evidentiary hearing and with the benefit of briefing and oral argument, the Court concludes that the Debtor's student loans are not consumer debts for purposes of 11 U.S.C. § 707(b)(1).

# I.  Factual and Procedural Background

The parties have filed a Joint Stipulation of Facts ("JSOF") [Doc. 34] from which, along with the docket and pleadings filed, the Court summarizes the relevant background.

## A.  The Debtor's educational and career background

The Debtor incurred her educational loans in what could be termed a "mid-career evaluation" of her professional goals and aspirations.  Although the Debtor attended college at three institutions between 1995 and 1999, she did not receive a degree. Her costs for these institutions were either self-funded or through student loans that were repaid. [JSOF, ¶ 35-38].

 Since 2001 the Debtor has worked in the insurance industry, almost exclusively in insurance underwriting. [JSOF, ¶ 23].  Between March 2001 and early 2011, the Debtor worked as a Claims Customer Service Center Supervisor at Sedgwick CMS; as a Claims Consultant, Insurance Service Professional at Alacrity Services, LLC; as a Licensed Agent/Frontline Underwriter for Hanover Insurance Company; and in the commercial underwriting department of Venture Captive Management LLC. [JSOF, ¶¶ 39-44].

3

In June 2011, the Debtor began work with CNA Insurance Company as a Client Specialist/Licensed Commercial Lines Insurance Agent.  While employed by CNA, in November 2011, the Debtor enrolled at Ashford University to take online courses in pursuit of a bachelor's degree in Organizational Management. [JSOF, ¶ 52].

The Debtor's return to school was not a job requirement of her current position; she did so to progress in her career, get a better position, and make more money with the goal of becoming an underwriter and underwriting director and "in order to do that, I was going to need a degree." [JSOF, ¶¶ 48-50].

According to the Joint Stipulation of Facts, the Debtor returned to school to pursue a degree because:

"[I]t's always been my goal to be an underwriter and actually become an underwriting director.  That's one of the reasons I decided to go back to school so that I can obtain my degree.  Because without it, I wouldn't be able to continue to move forward within that realm." [JSOF, ¶ 48].

"[T]o progress in my career" because [I] "wanted to advance in the arena of insurance, and specifically underwriting to become an underwriter as well as my ultimate goal of being an underwriting director. So in order to do that, I was going to need a degree." [JSOF, ¶ 49].

[P]ursuing a degree was not required to keep her current position, "but it was definitely in hopes of getting a new and better position, especially in speaking with reference to salary . . . to increase my chances to get a better position, which, of course, better position means more money." [JSOF, ¶ 50].

In particular, she chose a degree in Organizational Management because, even though it was not an underwriting degree, "I would like to get into the management side of underwriting" and "most of underwriting is going to come from a lot of on-the-job experience, but the management skill and the management piece, not necessarily." [JSOF, ¶ 55].

The Debtor's testimony at the evidentiary hearing is consistent with the joint stipulation of facts. The Debtor testified sincerely and thoughtfully about her educational ambitions and desire to broaden her opportunities for advancement in her chosen field.

Over the course of her education, the Debtor took online courses with Ashford University that fall into traditional foundation courses in English, philosophy, political science, mathematics, and sociology, as well as "upper level" courses relevant to her degree in Organizational Management.

During her course of study, the Debtor moved to Atlanta and made a lateral move within CNA to become a Commercial Lines Underwriting Tech. [JSOF, ¶ 66].

She received a modest pay increase to her annual salary from the high forties to approximately $50,000.

On December 10, 2014, the Debtor received her Bachelor of Arts degree in Organizational Management.

While attending school, the Debtor took out eight student loans totaling $40,188.00 to fund her tuition costs.  The current balance, with interest, is $55,290.02. Due to multiple forbearances and deferments, the Debtor has not made any payments on the student loans. [JSOF, ¶ 61-64].

In September 2017, CNA laid off the Debtor due to a slowdown in business and she remained unemployed until she was hired by Sompo International as a Primary Casualty Underwriting Assistant, which remains her current position.  This position does not have a degree requirement, but preferred skills and experience for the position include three to five years experience as a technical/underwriting assistant. [JSOF, ¶ 78-80].

The Debtor describes her current career objective as "To secure a stable, challenging position, which will allow me to utilize my current skills and knowledge that I have acquired throughout my years of experience to contribute to the growth and success of a great company." Since she obtained her degree in November 2014, no management opportunity either inside or outside her current employer has presented itself.  [JSOF, ¶ 76].

6

In addition to her employment in the insurance underwriting industry, the Debtor entered into a business venture called Cycle Elan, a cycling and fitness business, in November 2016.  She invested approximately $30,000 in Cycle Elan and held a 20% ownership stake.  Ultimately the business failed in 2020.  Although she is owed approximately $9,000 from her investment, she does not anticipate any recovery. [JSOF, ¶ 5-7, 27-34].

## B.  The bankruptcy filing

The Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on July 30, 2020.  The Debtor scheduled debts totaling $75,159.  The Debtor has no secured creditors. Although she has listed the Internal Revenue Service and Georgia Department of Revenue on Schedule E/F, it is unclear whether they assert any claims against her. [Doc. 1, Schedules D, E/F].  All of her debt is general, unsecured debt consisting of $52,586 in educational loans and $22,573 in credit card debt or open accounts. [JSOF, ¶ 9 and Doc. 1, Schedule E/F].

The Debtor's income and employment history are healthy. She reports gross income of $49,011 for 2018, $62,408 for 2019, and $40,877 through July 30, 2020.

The Debtor's assets are modest.  She owns a 2006 Nissan Ultima valued at $1,500, household goods valued at $1,500, clothes valued at $300, a checking account with a $100 balance, and a $10,000 401(k) retirement account.  She contributes four percent of her salary, $185.66, semi-monthly to her 401(k) retirement account.

7

In response to questions in paragraphs 16 (a) and (b) of the Debtor's petition, [Doc. 1 at 6, 16], the Debtor answered "No" to the question of whether her debts were "primarily consumer debts" and "Yes" to the question of whether her debts were business debts. The Debtor did not file a Form 122A "Means Test" because she contends that her debts are primarily non-consumer debts.

The United States Trustee's contention that the student loans are consumer debts gives rise to the issue now before the Court.

On September 9, 2020, the Chapter 7 Trustee filed his Report of No Distribution, with a docket entry stating, "I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed. R. Bankr. P. 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered."

## II. The Parties' Positions

Whether the Debtor's debts are "primarily consumer debts" is the controlling issue as to whether the Debtor may proceed in chapter 7 and receive a discharge or whether her case is subject to dismissal or conversion to chapter 13.

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by individuals "whose debts are *primarily consumer debts*" if it

finds that "the granting of relief would be an abuse of the provisions of chapter 7" unless the debtor consents to conversion of the case to chapter 11 or 13. (emphasis added).

Section 707(b)(2) provides a mathematical formula for determining a debtor's ability to repay debts from disposable income over a 60-month period following the date of the filing of the petition. Under this so-called "Means Test," the Court calculates a debtor's current monthly income, reduces that figure by certain living expenses, and multiplies the difference by 60. If that figure is greater than $13,650, the Court must presume that the debtor's case is abusive. Specifically, section 707(b)(2)(A)(i) requires the Court to presume that a debtor's chapter 7 filing is abusive if her current monthly income reduced by amounts determined under clauses (ii), (iii), and (iv) of section 707(b)(2)(A), and multiplied by 60, is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $8,175, whichever is greater; or (II) $13,650.

The Debtor did not complete a Means Test form. She contends that her debts are not "primarily consumer debts" because the majority in amount of her debts are student loans, not consumer debts.  Because her debts are not primarily consumer debts, she concludes she is not subject to the requirements of the Means Test of § 707(b)(1) and, therefore, need not file the form.

The Debtor's argument is that incurring the student loan debt was "profit-motivated," *i.e.*, that she incurred the debt for a business purpose to remain competitive and to obtain promotions and a higher salary.

The United States Trustee asserts that the student loans are consumer debts and that, therefore, her debts are "primarily consumer debts" such that the Means Test is applicable.

The United States Trustee contends that the Debtor's student loans qualify as consumer debts because they are personal in nature. She argues that creating a standard where the Debtor's subjective intent to better her skills and job prospects renders a student loan a business debt guts the meaning of a "consumer debt" and upends the purpose of § 707(b)(1).

The United States Trustee's Means Test calculations, based upon the Debtor's annual income, her status as a household of one and the expenses which she may deduct under the Means Test, show monthly disposable income of $1,862.99. This amount exceeds $227.50 per month, the initial threshold for the applicability of the presumption of abuse under § 707(b)(2). The United States Trustee concludes that the presumption of abuse, therefore, arises. The Debtor does not dispute that the presumption arises if her debts are primarily consumer debts.

As noted earlier, the mathematical calculations of the Means Test are irrelevant and inapplicable if the Debtor's debts are not "primarily consumer debts." This

10

depends on whether the Debtor's educational loans are "consumer debts."  If the educational loans are not consumer debts, the Debtor is not required to complete the Means Test form and is entitled to a chapter 7 discharge.  If the educational loans are consumer debts, she must complete the Means Test form and, under the presumption of abuse, she is not entitled to relief under chapter 7.

The controlling issue here, therefore, is whether the debtor's educational loans are consumer debts.

Part III discusses the relevant statutory definitions and the various tests that courts have developed.  Part IV explains the Court's conclusion that, under the facts of this case, the educational loans are not "consumer debts."

## III.  Statutory definitions and "tests" for determining "consumer debt"

### A.  Sections 101(8) and 707(b)(1) of the Bankruptcy Code

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by individuals whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of chapter 7.

The Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).

The Bankruptcy Code's definition of "consumer debt" has its origin in consumer protection laws, including the Fair Debt Collection Practices Act and the Truth in Lending Act. *See* S.Rep. No. 95-989 at 22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5808.

The Code itself gives no further guidance about how to categorize a debt; it is either a consumer debt or it is not. But importantly, the use of the term "primarily" in § 101(8) suggests a certain nuance to the term: a debt could have characteristics of both a consumer debt and a business debt, the significance being its primary nature or purpose.

## B.  Tests for whether a debt is a consumer debt

Courts have struggled, not just in the area of student loans, with constructing a test for whether a debt is a "consumer debt."  The Eleventh Circuit has not addressed the issue.

As a starting point, no court has held that student loans are per se consumer debts.  *See In re Steiner,* 2020 WL 2027250 (Bankr. S.D. Ill. 2020) (declining to adopt a per se rule and noting that the United States Trustee acknowledged that no courts have taken this position)*; In re Ferreira*, 549 B.R. 232, 237 (Bankr. E.D. Cal. 2016) ("The United States trustee cites no case in which a court has held that student loans are per se consumer debt and conceded during the hearing none were found.");

*In re Rucker*, 454 B.R. 554 (Bankr. M.D. Ga. 2011) (declining to adopt a per se rule to characterize a student loan debt as consumer debt or nonconsumer debt).

The bankruptcy court in *In re Stewart*, 201 B.R. 996, 1005 (Bankr. N.D. Okla. 1996), posited that "student loans in general should be treated as 'consumer debt' . . . in the absence of unusual facts or factors." On appeal, however, both the Tenth Circuit Bankruptcy Appellate Panel and Tenth Circuit Court of Appeals declined to adopt a per se rule. *See Stewart v. United States Trustee (In re Stewart)*, 215 B.R. 456 (10th Circuit B.A.P. 1997); *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796 (10th Cir. 1999).

If a student loan is not per se a consumer debt, the question becomes how to determine what exactly it is. A student loan is a debt with a somewhat esoteric quality; it is a debt incurred by an individual, but it is not a good that one purchases or an investment one makes in a tangible thing. It is a personal debt, yet it does not fit neatly within the definition of "consumer debt."

In other contexts, courts have adopted a "profit motive" test to determine whether a debt was incurred primarily for personal, family, or household purposes.

In *In re Booth*, 858 F.2d 1051 (5th Cir. 1988), the debtors were physicians who also had a number of other commercial ventures, including owning an office building, warehouse and marina, and developing a condominium project. The bankruptcy court

dismissed the case as a "substantial abuse" under the predecessor of § 707(b),[1] necessarily deciding that the debtor's' debts were primarily consumer debts. The district court affirmed.

On appeal, the Fifth Circuit reversed, concluding that the lower courts had erred in concluding that the debtors' debts were primarily consumer debts. In doing so, the Fifth Circuit held, "the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit." *Booth*, 858 F.2d at 1055.

The *Booth* court reasoned that the definition of consumer debt was adapted from consumer protection laws and that cases decided under the Truth in Lending Act "indicate that when the credit transaction involves a profit motive it is outside the definition of consumer credit." *Id.* at 1054-55. The Fifth Circuit concluded that the lower courts erred because substantial portions of the loan proceeds from mortgages on the debtors' principal residence were used to invest in the marina, warehouse, and condominium ventures, not for household purposes.

The Fifth Circuit also rejected the district court's determination that a signature loan, no matter what it is used for, is a consumer debt. Instead, the *Booth* Court

---

1 Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), former 11 U.S.C. § 707(b) permitted dismissal of the chapter 7 case of an individual whose debts were primarily consumer debts for "substantial abuse." BAPCPA revised the statute to permit dismissal of such a case for "abuse" and added a presumption of abuse based on the Means Test. The issue of whether a debt is a "consumer debt" is the same under previous and current statutes.

concluded, "[W]e can discern no reason why the use of funds flowing from an unsecured loan may not be examined when determining the proper classification of the debt. This scrutiny is consistent with the application of the profit motive test as an overall standard for classifying debt under section 707(b)." *Booth*, 858 F.2d at 1055.

Other courts, including the Fourth and Ninth Circuits, have adopted the profit motive test with respect to the analysis of "consumer debt" in the context of § 707(b). *See Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 873 F.3d 1060) (9th Cir. 2017); *Lind-Waldock & Co. v. Morehead*, 1 Fed.Appx. 104 (4th Cir. 2001); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146 (4th Cir. 1996); *In re Rucker*, 610 B.R. 570 (Bankr. N.D. Tex. 2019); *In re Meyer*, 296 B.R. 849, 865 (Bankr. N.D. Ala. 2003); *In re Bell*, 65 B.R. 575 (Bankr. E.D. Mich. 1986).

In determining whether a student loan is a debt incurred "primarily for a personal, family, or household purpose," courts have applied the "profit motive" test. The *Stewart* line of cases mentioned earlier illustrates the varied approaches and quandaries the profit motive test creates.

In *In re Stewart*, 201 B.R. 996 (Bankr. N.D. Okla. 1996) ("*Stewart I*"), the debtor, a physician, owed approximately $837,000, including $218,000 in student loans from commercial lenders and $320,000 owed to his former in-laws that helped fund his education. The United States Trustee sought dismissal of the case under the predecessor of § 707(b). The debtor countered that, because the majority of his debts

were not consumer debts (the majority being the student loans and the debt to his in-laws), § 707(b) was inapplicable.

The bankruptcy court acknowledged that courts have held that a consumer debt is one that the debtor incurred with no "profit motive." The court noted that "profit motive is relevant but not necessarily decisive." *Stewart I*, 201 B.R. at 1004. Under the circumstances of the case, the court concluded that the student loan debt and the debt to the in-laws were consumer debts because the evidence showed that a majority of the funds went to pay for living expenses for the debtor and his family during his lengthy education and a minority of the money was used for direct educational costs.

The court emphasized that it was improper to substitute an "oversimplified judicial catch-phrase" such as profit motive for the definition Congress enacted for "consumer debt." *Id*. at 1005. As the court explained, "Nothing is more intimately 'personal' than the debtor's own education –what goes, so to speak, between the debtor's own ears. Debts for loans which further that 'personal' endeavor, whether the source of the money be institutional or intra-family, come within the literal terms of 'consumer debt' as defined in § 101(8), and within probable Congressional intent in employing such term(s) in § 707(b)." *Id*. Although the court noted that the case involved "peculiar facts," it observed that student loans in general should be treated as consumer debt in the absence of unusual facts or factors. *Id*.

On appeal, the Tenth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's findings and conclusions but broadened the analysis of the profit

motive test.  *Stewart v. United States Trustee (In re Stewart)*, 215 B.R. 456 (10th Cir. B.A.P. 1997) ("*Stewart II*").

The BAP concluded (1) that student loans are not consumer debts per se; and (2) that the primary purpose for which the debt was incurred must be determinative. To that end, the BAP observed, "There may be circumstances in which the debtor can demonstrate that the student loan was incurred purely or primarily as a business investment, albeit an investment in herself or himself, much like a loan incurred for a new business."  *Stewart II*, 215 B.R. at 465.

The Tenth Circuit Court of Appeals affirmed in *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796 (10th Cir. 1999) ("*Stewart III*").  The Tenth Circuit, however, focused less on the concept of "profit motive" and instead examined how much of the intra-family loans and the student loans the debtor used for family and personal purposes.

The evidence was clear that the intra-family loans were used predominately for house payments, groceries, children's activities, and vacations; nothing in the record showed that the main purpose of the loans was to finance the debtor's education. Based on the use of the loan proceeds for personal and household expenses, the court concluded, the intra-family loans were consumer debts.

With respect to the student loans, the Tenth Circuit noted that, due to a lack of evidence in the record, it was unwilling to characterize the entire $218,000 as

consumer debt, but that at least $63,0000 went toward family expenses and thus that portion constituted consumer debt.[2]

After the *Stewart* cases, other courts have attempted to clarify the profit motive test in the context of student loans. This is due in large part to the fact that the *Stewart* cases have somewhat limited applicability: they were based on the factual finding that, regardless of the source, the debtor used the money for actual household and living expenses, a textbook definition of a consumer debt.

The *Palmer* cases, as discussed below, present a factual scenario that raise different issues more pertinent to the case before the Court.

In *In re Palmer*, 542 B.R. 289 (Bankr. D. Colo. 2015) ("*Palmer I*"), a debtor incurred $80,000 in student loans to pay for tuition for a doctorate degree in business administration while employed at an insurance company.  He completed his degree and a dissertation on the wine industry; he and his wife purchased and managed a bar that ultimately closed.  Upon its closure he began to focus on acquiring the insurance company from its current owners.

In response to the United States Trustee's motion to dismiss under §707(b), the debtor contended his student loans were not consumer debts because he took them out for tuition with the intention of becoming a business owner and, therefore, the debts

---

[2] Because the Tenth Circuit concluded that a separate alimony debt of $250,000 was a consumer debt, coupled with the $63,000 student loans and $250,000 intra-family loans, it concluded that the debtor's debts were primarily consumer debts.

were incurred with a profit motive, making them non-consumer debts. There was no dispute that the student loans were used exclusively for education purposes and not for living expenses.

The bankruptcy court focused on four concepts: (1) the profit motive should be interpreted narrowly; (2) determining whether a student loan is a business investment or a personal investment will be problematic without a narrow objective standard; (3) if the profit motive test is not interpreted narrowly, it can be applied to almost all student loans because people go to school for many different reasons and judging according to a student's motivation can lead to unfair results; and (4) a narrow standard tied to an existing business or to a requirement for advancement in a current job is necessary.

Based on these considerations, the bankruptcy court concluded that, "in order to show a student loan was incurred with a profit motive, the debtor must demonstrate a tangible benefit to an existing business or show some requirement for advancement or greater compensation in a current job or organization. The goal must be more than a hope or an aspiration that the education funded, in whole or in part, by student loans will necessarily lead to a better life through more income or profit." *Palmer I*, 542 B.R. at 297.

Based on this standard, the *Palmer* bankruptcy court concluded that the debtor did not prove the student loans were incurred purely or primarily for a profit motive because incurring the debt was not required by his employer, it was not done with the

19

objective of profiting his employer's business, and his business venture was to own a bar, unrelated to his current employment.   As a result, the court concluded that the student loans were consumer debts and granted the United States Trustee's motion to dismiss.

On appeal, the district court reversed and remanded.  *Palmer v. Laying*, 559 B.R. 746 (D.Colo. 2016) ("*Palmer II*").  The district court rejected the four concepts that the bankruptcy court emphasized and instead stated that "the primary purpose for which the debt was incurred must be determinative." *Palmer II*, 559 B.R. at 750.

To that end, the *Palmer II* district court observed, "at least under the circumstances of this case, where [the debtor] incurred the student loan debt while employed, non-consumer debts include those incurred primarily as a business investment in oneself." *Id*.  With respect to the test formulated by the bankruptcy court – that  the debtor must demonstrate either a tangible benefit to an existing business or show some requirement for advancement or greater compensation in a current job – the district court concluded that nothing in *Stewart II* or *III* supported such a conclusion.

As to the tangible benefit prong, the *Palmer II* district court noted that this flips the inquiry and places the focus on the benefit to the employer, not the motivation of the debtor.  As to the requirement for advancement or greater compensation, the district court concluded that nothing in *Stewart II* or *III* required a debtor's decision to

incur student loans be the result of an employer mandate or even that a debtor pursue education while currently employed.

The *Palmer II* district court emphasized that the fact that the employer did not require the debtor to obtain the degree or that it did not benefit the employer in some demonstrable way is "irrelevant as to whether *Mr. Palmer* had a profit motive in undertaking the doctorate." *Id.* at 756 (emphasis in original). His motive, the district court concluded, was clear from his unequivocal testimony: to own a business. That, coupled with his testimony that his courses helped him understand how to attract customers, build relationships, and run a profitable business, demonstrated that his student loan debt was incurred with a profit motive.

Other courts have interpreted the "profit motive" test in the context of student loans using the *Stewart* and *Palmer* cases as templates.

In *In re Missick*, 2019 WL 8756605 (Bankr. M.D. Fla. 2019), the bankruptcy court concluded that a rebuttable presumption exists that student loan debt constitutes consumer debt. In the context of a § 707(b) motion, the burden shifts to the debtor to prove by a preponderance of the evidence that a student loan debt is *not* a consumer debt.

The court held that, to rebut the presumption and prove a student loan is not a consumer debt, the debtor must demonstrate (1) that the student loan debt is "directly tied to the advancement of a tangible and impending business opportunity" related to

work the debtor was engaged in when the education was undertaken; and (2) that the debtor specifically intended to incur the student loan debt to pursue that business opportunity. *Missick*, at *2. The evidence must also show the portion of the student loan debt that was incurred to pursue the business opportunity, as opposed to a portion that was used for living expenses, for example. *Id*.

In *In re Valdivia*, 2020 WL 4939161 (Bankr. E.D.N.C. 2020), the Debtor argued that she incurred student loans for bachelor and master's degrees in nursing in a mid-life career change with a "profit motive" to increase her income. The *Valdivia* court observed that the Fourth Circuit had applied the profit motive test in at least two instances, but that the facts of those cases, which involved a business venture or investment, were distinguishable based on the nature of student loan debt. *See Lind-Waldock & Co. v. Morehead*, 1 Fed.Appx. 104 (4th Cir. 2001) (debt incurred while speculating in the futures market not a consumer debt); *Cypher Chiropractic Center v. Runski (In re Runski)*, 102 F.3d 744 (4th Cir. 1996) (debt for office equipment financed in debtor's own name was not intended for personal use for purposes of redemption under 11 U.S.C. § 722).

The *Valdivia* court rejected the debtor's argument that it should analogize her student loan debt to "entrepreneurial debt" because she was motivated to increase her income. *Valdivia*, 2020 WL 4939161, at *4.

The court acknowledged that the debtor had provided credible testimony that she chose to pursue additional degrees to increase her earning capacity, but it could

22

not conclude that her decision was made with a profit motive that removed it from a category of debt incurred primarily for a personal, family, or household purpose. The court reasoned, "[S]tudent loans funded additional vocational training that would allow for a higher salary, but the debtor wanted to increase her income in order to benefit her family so they might 'have a better life.' The student loans were incurred to ultimately fund the Debtor's household and benefit her family." *Id*. at *5.

In *In re Ferreira*, 549 B.R. 232 (Bankr. E.D. Cal. 2016), the bankruptcy court adopted *Palmer I*'s narrow view of the profit motive test and concluded it must be tied to an existing business purpose or required for an advancement in a current job. Because the debtor was unemployed at the time she incurred the student loans to fund her nursing school education, the court concluded, she was not in an ongoing business related to nursing, and a degree was not a requirement for advancement in an existing job.

At least one court has declined to explicitly adopt a profit motive approach.  In *In re Steiner*, 2020 WL 2027250 (Bankr. S.D. Ill. 2020), the bankruptcy court held that the appropriate way to determine whether a particular student loan constitutes a consumer debt is to consider the totality of the circumstances on a case-by-case basis.

The court observed that while a debtor's motive may be a relevant consideration, "the *purpose* of the loan is determinative." *Steiner*, at *6 (emphasis in original). While the debtor asserted in his brief that he went to college to obtain an education and make more income, he offered no evidence or testimony to substantiate

this statement; he offered no evidence as to the primary purpose of obtaining the student loans; and he was not asked to attend college by an employer and was not operating a business at the time the loans were incurred.  As a result, the court could not discern a business or nonconsumer purpose for incurring the student loans. *Id*.

The Court now considers whether the Debtor's student loans are "consumer debts" under the facts in this case.

## IV.  The Debtor's Student Loans

The Court makes the following findings of fact that are material to determination of the sole legal question of whether the Debtor's student loans are "consumer debts" as defined in § 101(8) such that the "Means Test" provisions of § 707(b) apply to her:

1.  The proceeds of the loans were not used for living expenses.  The Debtor incurred the student loans, and used the money, for payment of tuition.

2.  The Debtor's purpose for obtaining a degree was to improve her skills and enhance her prospects for advancing her career in order to make more money.

3.  A college degree was not required for her existing job, and no current opportunity existed with her employer for her advancement to a position for which a college degree was required.

24

The case law establishes that no per se rule exists for determining whether a student loan is a "consumer debt."  It suggests that making the distinction involves two inquiries.

The first inquiry is how the debtor used the loan proceeds.  To the extent that a debtor incurs student debt to pay living expenses while pursing a degree, the debt is a consumer debt.  *E.g., Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 807 (10th Cir. 1999); *In re De Cunae*, 2013 WL 6389205, at * 3 (Bankr. S.D. Tex. 2013).

The second inquiry is necessary when, as in this proceeding, a debtor uses the student loan proceeds only for the payment of tuition, not for personal living expenses.  Whether a student loan is a consumer debt in this circumstance requires determination of whether the debtor had a "profit motive," determined by reference to her situation at the time the debt was incurred.  Courts have taken two approaches to this question, illustrated by the conflicting decisions of the bankruptcy court and the district court in the *Palmer* cases discussed above.

The bankruptcy court in *In re Palmer*, 342 B.R. 289, 297 (Bankr. D. Colo. 2013) ("*Palmer I*"), stated the following requirement for a student loan to be incurred with a profit motive so that it is not a consumer debt:

[T]he debtor must demonstrate a tangible benefit to an existing business or show some requirement for advancement or greater

25

compensation in current job or organization.  The goal must be more than a
hope or an aspiration that the education funded, in whole or in part, by
student loans will necessarily lead to a better life through more income or
profit.

Other courts have adopted this "tangible benefit" approach, which effectively
requires a connection between the education and a debtor's current business or
currently available opportunity for advancement or an increase in compensation.  *E.g.,*
*In re Valdivia*, 2020 WL 4939161 (Bankr. E.D.N.C. 2020); *In re Missick*, 2019 WL
8756605 (Bankr. M.D. Fla. 2019); *In re Ferreira*, 549 B.R. 232 (Bankr. E.D. Cal.
2016).  *See also In re Steiner*, 2020 WL 2027250 (Bankr. S.D. Ill. 2020).

The district court in *Palmer* rejected the tangible benefit requirement.  *Palmer*
*v. Laying (In re Palmer)*, 559 B.R. 746 (D. Colo. 2016) ("*Palmer II*").  Concluding
that "the primary purpose for which the debt was incurred must be determinative," the
*Palmer II* court held a student loan could be a non-consumer debt if it was incurred
"primarily as a business investment in oneself."  *Id*., 559 B.R. at 750.  *Accord, In re*
*De Cunae*, 2013 WL 6389205, at *4 (Bankr. S.D. Tex. 2013) ("[S]tudent loan
proceeds that are used for direct educational expenses with the intent that the
education received will enhance the borrower's ability to earn a future living are not
consumer debts.").

Under the *Palmer I* approach that requires a tangible benefit, the student loans
here are consumer debts because the education that they financed was not connected

to an existing opportunity for advancement or greater compensation with the Debtor's employer. Under the *Palmer II* approach, however, the student loans are not consumer debts because the Debtor incurred them as an investment in herself, that is, to make more money by enhancing her prospects for a better job.

In this Court's judgment, the district court's approach in *Palmer II* is the better one.

Although the Eleventh Circuit has not addressed the question of how to determine whether a debt is a "consumer debt," other Circuits agree that a debt is not a consumer debt if the debtor incurred it with a "profit motive." *E.g., Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 807 (10th Cir. 1999); *In re Booth*, 858 F.2d 1051 (5th Cir. 1988); *Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 873 F.3d 1060 (9th Cir. 2017); *Lind-Waldock & Co. v. Morehead (In re Morehead)*, 1 Fed. Appx. 104 (4th Cir. 2001); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146 (4th Cir. 1996). *See also In re Rucker*, 610 B.R. 570 (Bankr. N.D. Tex. 2019); *In re Meyer*, 296 B.R. 849, 865 (Bankr. N.D. Ala. 2003); *In re Bell*, 65 B.R. 575 (Bankr. E.D. Mich. 1986). The Tenth Circuit's ruling in *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 807 (10th Cir. 1999) ("*Stewart III*"), is the only case addressing the issue in the context of a student loan at the Circuit level, but it did not reach the precise issue here, determining that at least some portion of the student loan debts represented consumer debt because the loan proceeds were used for personal expenses.

27

The *Palmer II* approach is more consistent with the profit motive standard than the *Palmer I* view that a student loan is a consumer debt in the absence of a "tangible benefit" or a current connection to the debtor's existing opportunities. A debtor who wants an education to make more money has a profit motive regardless of whether she expects additional income from an existing opportunity with her current employer or from a different position somewhere else. No principled reason exists for making a distinction between the two situations.

For example, under the *Palmer I* rule, a secondary school math teacher who must make progress toward a master's degree to keep her job has a "profit motive," but an hourly worker in a child-care facility who wants to get a college degree to get a job as a certified kindergarten teacher does not. The Court sees no difference in the two situations.

The Court concludes, therefore, that the Debtor's student loan debt is not "consumer debt" as defined in 11 U.S.C. § 101(8). Accordingly, the Debtor's debts are not "primarily consumer debts," and the "means test" provisions of 11 U.S.C. § 707(b) do not apply in her case.

It is, therefore, hereby ORDERED and ADJUDGED that the motions of the United States Trustee to dismiss this case be, and the same hereby are, DENIED.

**END OF ORDER**

**<u>Distribution List</u>**

Anvetta Maria Ruff
3475 Vinings North Trail SE
Smyrna, GA 30080

Charles M. Clapp
Law Offices of Charles Clapp, LLC
5 Concourse Parkway NE
Suite 3000
Atlanta, GA 30328


Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303